(57 App. Div. 403.)

### JONES et al. v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. January 25, 1901.)

MUNICIPAL CORPORATIONS—CONTRACTS—REPUDIATION—PROSPECTIVE PROFITS—LIABILITY.

Where the comptroller of the city of New York suspended payment on an improvement contract until he could investigate the validity of contracts made by the city before the consolidation act, there was no repudiation of the city's contract obligations, but a temporary suspension of payment; and hence the contractor, on stopping work, was not entitled to recover prospective profits under the contract.

Appeal from judgment on report of referee.

Action by Charles Jones and another against the city of New York. From a judgment for plaintiffs for less than the relief demanded, they appeal. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

L. Laflin Kellogg, for appellants.
Theodore Connoly, for respondent.

PATTERSON, J.   This cause is before us a second time, and now, as upon the former occasion, "the sole question here is whether the referee's conclusion that the plaintiffs were not entitled to the profits which they would have realized upon their contract but for the defendant's breach thereof was correct." Jones v. City of New York, 47 App. Div. 39, 62 N. Y. Supp. 284. The question arises upon an appeal by the plaintiffs from a judgment entered in their own favor. The action was brought to recover damages for the breach of a contract entered into in the year 1896 between the plaintiffs and the proper authorities of the then city of New York for building an outlet sewer and appurtenances in Farragut street from the East river to Hunt's Point road, and in Hunt's Point road from Farragut street to Whittier street, and in Whittier street from Hunt's Point road to Whitlock avenue, and in Whitlock avenue from Whittier street to Westchester avenue, and in Westchester avenue from Whitlock avenue to Edgewater road, and in Edgewater road from Westchester avenue to Jennings street. The work to be performed was extensive and important, and consisted of three classes. Of what was known as class 1 there were to be 378 linear feet of construction; of class 2, 4,470 linear feet; of class 3, 6,835 linear feet; and the total amount of compensation to be paid the plaintiffs, as contractors, was the sum of $408,211. All the work was to be completed, according to the terms of the contract, within 750 days. The plaintiffs commenced work on the 12th of October, 1896. On or about the 22d of April, 1898, they stopped, under circumstances presently to be adverted to. At that time but little more than one-quarter of the sewer had been built. By a provision of the contract the plaintiffs were to receive payments from time to time as the work progressed, and on the 20th of March, 1898, they were entitled to a payment of $4,535.51. All the conditions precedent to the right to receive that sum were seemingly complied with, and a requisition or certificate for it was duly forwarded to the comptroller of the city of New York. It was not honored, payment being refused by the comptroller. The original contract was with the mayor, aldermen, and commonalty of the city of New York, and was one of those under which work was being done at the time the Greater New York charter went into effect, and the consolidation of various municipal corporations into the present city of New York took place. It would appear that some time in or prior to March, 1898, a question arose as to the condition of the public debt of the city of New York, and as to the constitutional limit of indebtedness of the old city of New York having been reached or exceeded before the 23d day of September, 1896, which was the date of the plaintiffs' contract.

The requisition for the payment of the $4,535.51 was not honored or paid by the comptroller because of a doubt existing in his mind respecting the constitutional debt limit above mentioned.   Various conversations were had between the plaintiffs and their attorney at law with the deputy comptroller and with the comptroller of the city of New York after March, 1898.   They will be referred to hereafter. On the 22d day of April, 1898, the plaintiffs served upon the commissioner and the deputy commissioner of sewers for the borough of the Bronx a written notice, in which, referring to their contract and to the payment due them of $4,535.51, and to the refusal of the comptroller of the city of New York to pay that sum to them or their assigns, they proceed to state:

"By reason of this act of the city in violation of the terms of the contract, in failing to make the said payment above referred to, and by reason of other failures on the part of the city to keep the terms of the said contract, we have elected to treat the said failure to pay, as well as other wrongful acts upon the part of the city, as a breach of contract, to stop all work under the contract, and to hold the city responsible for all loss and damage in the premises."

Nothing more was ever done by the plaintiffs in performance under the contract, but they waited until the 28th of June, 1898, when they began this action, in which they sought to recover for the value of the work they had actually performed, and also for the alleged profits that would have accrued to them had they gone on and completed the whole work under the contract according to its requirements.   On the first trial of the cause the referee found that the plaintiffs were entitled to recover for work actually done and materials actually furnished under the contract, and this for the reason that the refusal of the comptroller to pay the requisition of March 24, 1898, was a breach of the contract on the part of the city.   He declined to allow them as damages the anticipated profits they claimed, but in his report made a finding of fact which, had it been sustained by the evidence, we considered would have authorized a recovery of those profits. That finding was that the plaintiffs were informed by the officers of the defendant that the contract was invalid, and that no further payment could or would be made thereunder.   It was thought by this court that, if that finding were properly made on the evidence, the conclusion that the plaintiffs were not entitled to the profits was an inaccurate one; and in the consideration of the subject the rule of law applicable to the case was sufficiently announced, at least for all the purposes of its disposition at the present time.   We held, in substance, that the breach of the contract resulting from the refusal of the comptroller to pay the requisition of March 24, 1898, was such as entitled the plaintiffs to abandon the work under the contract, and to recover for what had already been done, but that such a simple breach would not entitle the plaintiffs to prospective profits.   On the second trial the learned referee has followed the rule laid down by this court respecting the effect of the breach.   On this appeal we are, in effect, asked to hold that the breach carried with it the right to recover anticipated profits, as well as the value of the work actually performed.   Upon a re-examination of the case, we find no reason for

changing our view respecting the general effect upon the plaintiffs' rights of this breach, so far as we have now considered it. The case of Moore v. Taylor, 42 Hun, 58, is quite in point; and William Wharton, Jr., & Co. v. Winch, 140 N. Y. 290, 35 N. E. 589, is also a direct authority for the proposition as stated in the former opinion in this case. It is urged by the learned counsel for the appellants that the opinion in William Wharton, Jr., & Co. v. Winch contains merely dicta of the learned judge who wrote it, as to the effect of a breach of a contract by failure to pay an installment when due; but an examination of that opinion shows what is therein said on this subject was concurred in by the whole court, namely, that the failure to pay the installment when due upon the contract involved in that case was not such a breach of the entire contract as would authorize the contractor to refuse to proceed further, and to recover the profits he would have earned had the contract been fully performed. Our view of the contract in this cause, as set forth in our former opinion and now restated, is that from the structure of the contract it is clear the mere failure to make payment of an installment due according to its provisions was not a breach of the entire contract, entitling the plaintiffs to recover damages for profits as upon full completion of the contract.

The question remains as to the condition of the proof upon the subject of an absolute abandonment, as matter of fact, of the contract by the city. That is to say, does the proof show, as claimed by the learned counsel for the appellants, that before the plaintiffs served the notice of the 22d of April, 1898, the proper city authorities declared, actually or in substance, that the contract was an illegal and invalid one, or that they acted concerning the matter in such a way as to indicate that they would not consider the city bound to the contract, or accept further performance under it? If such actual abandonment took place, then it may be claimed that under our former decision the right to recover anticipated profits is settled. The referee on the trial now under review has held, in substance, that the comptroller, in declining to pay the requisition of March 24, 1898, was acting merely with prudence and circumspection, in view of a situation novel and apparently perilous in its character, and that there was only a temporary suspension of payment until the condition of the city debt and the validity of various contracts, including that of the plaintiffs, could be ascertained upon due examination. The plaintiffs' contention is that as matter of fact, and as the result of interviews had with the comptroller and the deputy comptroller of the city of New York, declarations and statements were made of such a character as admitted of no other inference than that the contract was repudiated by the city. We need not now inquire as to the authority of those officials to declare contracts void or valid; for, upon an inspection of the record, we would not feel justified in reaching any other conclusion upon the question of fact as to the attitude taken by the comptroller and the deputy comptroller towards this contract, in the interviews referred to, than that reached by the referee.

It is urged by the plaintiffs that the deputy comptroller stated, not only to these plaintiffs, but to other contractors, that their contracts

were invalid and unenforceable, and that the city virtually repudiated them. This is strenuously denied by the deputy comptroller, and the referee has adopted the statement of the latter; but we do not know by what authority the deputy comptroller could repudiate contracts, and, indeed, it is quite evident that the plaintiffs did not rest upon any actual or supposed declarations of that officer, because on the 22d of April, 1898, the attorney for the plaintiffs had a final conversation with the comptroller, and, as he claims, it was at the conclusion of that conversation, and upon what was therein said by the comptroller, that the notice of the 22d of April, 1898, above referred to, was served upon the commissioner and deputy commissioner of sewers. On the issue of fact, the case turns upon what took place at this conversation. The learned referee has found that the plaintiffs' attorney misapprehended what was said, or is mistaken in his memory of what took place. The papers that were submitted by the comptroller to the attorney at that interview certainly indicate that there must have been a misunderstanding on the part of the attorney of the position taken by the comptroller. That officer positively denies that he said anything to the effect that the contract would not be recognized by the city as a valid one, or that he put himself in any other situation than one of inquiry concerning its validity. I do not see how we can interfere with the finding of the referee upon this subject. He says in his twelfth finding:

"That the refusal of the comptroller to make the payment of $4,535.51, due under the certificate of March 24, 1898, was owing to his uncertainty in regard to the law and the facts concerning the case, and his desire before making the payment to assure himself in regard to the validity of the contract, and for that purpose to ascertain whether the old city of New York had exceeded its debt limit on the 23d of September, 1896, the date of the contract in question; that such action on the part of the comptroller was entirely reasonable and justifiable, under the exceptional circumstances, and in no way constituted or implied an abandonment or repudiation of the contract."

He also finds that in the interview had with the plaintiffs' attorney on the 22d of April, 1898, full notice and information of the position taken by the comptroller was given.

We are of the opinion, therefore, that the judgment should be affirmed, with costs. All concur.